UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LINDA L. ABEYTA,** | ) NO. CV 06-5041-MAN |
| **Plaintiff,** | ) |
| | ) MEMORANDUM OPINION |
| v. | ) |
| | ) AND ORDER |
| **MICHAEL J. ASTRUE,**[1] | ) |
| **Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

Plaintiff filed a Complaint on August 11, 2006, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for a period of disability ("POD") and disability insurance benefits ("DIB"). On August 28, 2006, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on August 24, 2007, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007, and is substituted in place of former Commissioner Joanne B. Barnhart as the Defendant in this action. (*See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security Act, last sentence, 42 U.S.C. § 405(g).)

alternative, remanding the matter for a new administrative hearing; and defendant seeks an order affirming the Commissioner's decision. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed her application for a POD and DIB on June 26, 2003, in which she claims to have been disabled since November 18, 2002. (A.R. 22, 39, 88-90, 118.) The Commissioner denied plaintiff's claim initially and upon reconsideration. (A.R. 39-42, 44-48.) Thereafter, plaintiff timely requested a hearing, and on March 1, 2005, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge David J. Agatstein ("ALJ"). (A.R. 49, 593-648.) On June 1, 2005, the ALJ denied plaintiff's claim (A.R. 22-36), and the Appeals Council subsequently denied plaintiff's request for review of that decision (A.R. 6-8).

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff has met the insured status requirements of the Social Security Act through December 31, 2008, and has not engaged in substantial gainful activity since November 18, 2002, the alleged onset of her disability. (A.R. 34.) Throughout the period in question, plaintiff was found to be "closely approaching advanced age." (A.R. 35.)

The ALJ found that plaintiff has medically determinable impairments

consisting of: bilateral carpal tunnel syndrome (status post releases on the left in January 2002 and July 2004, and status post releases on the right in November 2002 and November 2003); a two millimeter disc bulge of the cervical spine; bilateral shoulder strain/sprain; bilateral elbow tendonitis; arthritic deformities of the distal interphalangeal joints of both hands; and obesity. (A.R. 34-35.)

In setting forth plaintiff's residual functional capacity, the ALJ relied upon the opinion of the non-examining medical expert and found that plaintiff can lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six out of eight hours, and sit for six hours in an eight-hour workday; she can occasionally (up to ⅓ of the work day) grasp and finger, and she cannot elevate her upper extremities above shoulder level. (A.R. 35.) Based on this residual functional capacity assessment and the testimony of a vocational expert, the ALJ found that plaintiff is unable to perform her past relevant work as a school secretary or bookkeeper, but she has transferable skills to perform one semi-skilled sedentary occupation: clerical information clerk. (*Id.*) Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act during the time period at issue. (A.R. 18.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial

3

evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Commiss'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Sec'y., 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges the following two issues: (1) whether the ALJ properly evaluated plaintiff's residual functional capacity with respect to her manipulative limitations; and (2) whether the ALJ identified a significant range of work within plaintiff's residual functional capacity. (Joint Stipulation "Joint Stip." at 3.) The Court addresses

each of these two issues below, although not in the precise manner in which they were presented.

**I.  The ALJ Failed To Provide Specific And Legitimate Reasons For Disregarding The Opinion Of Plaintiff's Treating Physician Regarding Plaintiff's Manipulative Limitations.**

The greatest weight is accorded to the opinions of a claimant's treating physician because, "the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). When, as in this case, an ALJ elects to disregard the medical findings of treating physicians, he must set forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id*. An ALJ's failure to provide such reasons is reversible error. Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987); *see also* Smolen, 80 F.3d at 1282; Cotten v. Bowen, 799 F.2d 1403, 1408-09 (9th Cir. 1987). Moreover, the opinion of a specialist about medical issues related to his area of specialization are given more weight than the opinion of a non-specialist.   Smolen,   80   F.3d   at   1285   (*citing*   20   C.F.R.   § 404.1527(d)(5)).

Dennis Ainbinder, M.D., plaintiff's treating orthopedic surgeon, opined that plaintiff can use each hand for grasping, twisting, and turning objects for only 20 percent of an eight-hour workday. (A.R. 28, 518.)  He similarly opined that plaintiff can use each hand for fine manipulation for only 20 percent of an eight-hour workday, and she can use each arm for reaching for only 20 percent of an eight-hour workday.

*(Id.)* At the hearing, Harvey Alpern, M.D., an internist who acted as a non-examining medical expert in this case, testified, based only upon his review of the medical evidence, that plaintiff can "occasionally (up to ⅓ of the work day) grasp and finger, and she cannot elevate her upper extremities above shoulder level." (A.R. 28, 621.) Critically, taking both physicians' opinions into account, the vocational expert testified that with the limitations described by Dr. Ainbinder, no jobs exist that plaintiff could perform, but with the residual functional capacity described by Dr. Alpern, one job exists that plaintiff could perform.

As the ALJ clearly and correctly observed: "[i]n the present case, there is no objective test to determine whether the claimant's manipulative limitations are 20 percent or 33⅓ percent; both numbers are estimates and, mathematically, relatively close. The testimony of the vocational expert suggests, however, that the difference is dispositive." (A.R. 29.) The ALJ rejected the opinion of Dr. Ainbinder and accepted, instead, the opinion of Dr. Alpern, for reasons that may be specific, but are neither legitimate nor persuasive.

First, while acknowledging that "Dr. Ainbinder's opinion would generally be controlling" in this case, the ALJ indicates that he is "persuaded" to adopt "Dr. Alpern's overview of the case, from his vantage point of a medical expert *sworn to impartiality*." (A.R. 29; emphasis added.) As plaintiff's counsel correctly points out, there is no evidence to suggest a lack of impartiality or any impropriety on the part of Dr. Ainbinder. (Joint Stip. at 5.) It is well-settled that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings

are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995). Indeed, "'[t]he Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.'" Id. (citation omitted)

Second, the ALJ finds Dr. Alpern's assessment of plaintiff's limitations to be "fundamentally correct, on its face and in its implications." (A.R. 29.) However, in crediting Dr. Alpern's opinion over that of Dr. Ainbinder, the ALJ only focuses on the testimony of Dr. Alpern on direct examination, in which he limited plaintiff's use of her hands to 33⅓ percent of the day. The ALJ makes no reference whatsoever to Dr. Alpern's testimony on cross-examination in which he conceded, without qualification, that Dr. Ainbinder's opinion, limiting plaintiff's use of her hands to 20 percent of the work day, is "reasonable." (A.R. 630.) In fact, Dr. Alpern testified that there was "not a great deal of difference" between his opinion and Dr. Ainbinder's opinion with respect to plaintiff's manipulative limitations. (A.R. 631.) In view of Dr. Alpern's testimony on cross-examination regarding the reasonableness of Dr. Ainbinder's opinion, Dr. Alpern's testimony regarding the critical degree of limitation in plaintiff's ability to engage in hand manipulations is equivocal at best. Thus, the ALJ should have given Dr. Ainbinder's "reasonable" opinion controlling weight in determining plaintiff's residual functional capacity.[2]

---

[2] The ALJ's extended discussion of his purportedly "specific and legitimate considerations" (A.R. 29-30) for adopting Dr. Alpern's opinion over that of Dr. Ainbinder involves an evaluation of plaintiff's treatment records and of opinions rendered by various physicians, at different times, regarding her medical condition and limitations. Dr.

7

Although the ALJ correctly states that, "[w]hen there are conflicts in evidence provided by equally qualified physicians, the Administrative Law Judge is called upon to weigh the evidence in order to come to a conclusion about whether a claimant is disabled," the physicians in this case are not "equally qualified." (A.R. 28.) Plaintiff's treating physican is an orthopedic specialist who has been treating plaintiff since 2003, whereas the testifying medical expert is merely an internist who never examined plaintiff and based his opinion solely upon the medical record. Had the ALJ properly evaluated the physicians' opinions, in accordance with the appropriate legal standards, the ALJ would have necessarily adopted Dr. Ainbinder's opinion as to plaintiff's limitations -- an opinion that the non-examining medical expert found to be "reasonable" -- and, therefore, would have found plaintiff to be "disabled."

Accordingly, the ALJ's acceptance of Dr. Alpern's equivocal opinion over the medically reasonable opinion of Dr. Ainbinder, plaintiff's treating specialist, constitutes reversible error.

---

Alpern, who based his opinion on a review of the same records and opinions and unhesitatingly testified that Dr. Ainbinder's opinion is "reasonable," is more qualified to evaluate such documents than the ALJ, who is not medically trained and apparently reached a different conclusion from that of the medical expert regarding the reasonableness of Dr. Ainbinder's assessment of plaintiff's limitations. Indeed, the ALJ may not substitute his judgment regarding medical issues for that of trained physicians. *See* Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999)(ALJ may not substitute his own diagnosis for that of the physicians.); Attia v. Astrue, 2007 WL 2802006 (E.D. Cal. Sept. 24, 2007)("It does not appear that the ALJ is competent to substitute his own opinion for findings and conclusions of a physician."); *see also* Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000)("We have likewise insisted that an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence and authority in the record"; and further noting that an ALJ cannot "play doctor" and make independent medical findings).

**II.   The ALJ Failed To Identify A "Significant Range Of Work" Within Plaintiff's Residual Functional Capacity.**

Assuming, *arguendo*, that plaintiff could use her hands for up to 33⅓ percent, rather than 20 percent, of the day, the vocational expert testified that such an individual has transferrable skills to perform only one semi-skilled, sedentary occupation:  clerical information clerk.  (A.R. 637.)  However, under Ninth Circuit precedent, the identification of only one alternate, semi-skilled occupation fails to demonstrate adequately that plaintiff could perform a "significant range" of other semi-skilled work.

In Lounsburry v. Barnhart, 468 F.3d 1111 (9th Cir. 2006), the ALJ found that Lounsburry was "not-disabled," because she could perform one alternate, semi-skilled occupation.  On appeal, however, the Ninth Circuit determined that Lounsburry was disabled, because "[o]ne occupation does not constitute a significant range of work."  *Id.* at 1117.  Although the factual situation in Lounsburry does not precisely align with the facts presented in this case,[3] the Ninth Circuit nonetheless interpreted and defined the phrase "range of work" in the context of determining a plaintiff's ability to perform "other work."

In Lounsburry, the Ninth Circuit stated that "the specific issue we confront is the meaning of the phrase 'significant range of work.'"  468

---

[3]   In Lounsburry, the plaintiff was of "advanced age" during the period in question and, as such, the Court applied grid rule 202.00.  Plaintiff acknowledges that grid rule 202.00 is inapplicable in this case, but relies upon the Lounsburry Court's analysis regarding its interpretation of the phrase "significant range of work."

9

F.3d at 1117.  The Court opined that "[t]o interpret 'significant range of . . . work" to mean simply 'work' nullifies the concept of 'range' contained in the text.  Congress might have drafted Rule 202.00(c) to require only a 'significant number of jobs'; it chose not to do so."  *Id.*  The Ninth Circuit opined that the term "work" means "distinct *occupations*," as opposed to "individual *jobs*," and the term "significant numbers" is no substitute for and cannot satisfy the requirement of a "significant *range* of . . . work."  (*Id.;* emphasis in original.)

The record in Lounsburry, as in the present case, established that the claimant's skills would transfer to precisely one occupation at her residual functional capacity.  As in Lounsburry, the ALJ's reliance on plaintiff's ability to perform only one job to support the ALJ's conclusion that plaintiff was "not disabled" is misplaced.  Thus, even if plaintiff's use of her hands is limited to 33⅓ percent of the work day, the identification of only one job is insufficient to support a finding of "not disabled" within the meaning of a "significant range of jobs" as defined under Ninth Circuit precedent.

**III. Payment Of Benefits Is Required.**

The final question is whether to remand for further administrative proceedings or whether a reversal and remand for payment of benefits is required.  The decision whether to remand for further proceeding is within the discretion of the Court.  Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000)  However, where a remand would simply delay payment of benefits or where no useful purpose would be served by further administrative proceedings, it is appropriate to exercise this

discretion to direct an immediate award of benefits.  <u>Harman</u>, 211 F.3d at 1179.

It is well-settled that the court will credit the evidence, reverse and remand for an award of benefits, where:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  <u>Smolen</u>, 80 F.3d at 1292.  *See* <u>Lester</u>, 81 F.3d at 834 (where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, the opinion is credited as a matter of law)(citation omitted).

In the present case, all three of the above conditions are satisfied.  The record here is fully developed, and there are no outstanding factual issues.  The ALJ discredited the opinion of plaintiff's treating orthopedic surgeon in a manner contrary to controlling Ninth Circuit precedent, and had he given the proper weight to the treating physician's opinion, a finding of disability would have been required.  Further, regardless of the ALJ's improper rejection of the treating physician's opinion, the ALJ failed to identify a "significant range of work," that plaintiff could perform. Accordingly, the Commissioner failed to meet his burden at Step Five.  Thus, as there is no legitimate reason for further administrative proceedings or delay, this case should be reversed and remanded for the payment of benefits.
///
///

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for the immediate calculation and payment of benefits in accordance with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 12, 2008

                              /s/
                    MARGARET A. NAGLE
                    UNITED STATES MAGISTRATE JUDGE